UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

───────────────────

№ 07-CV-0772 (JFB) (AKT)

───────────────────

KEVIN JONES,

Plaintiff,

VERSUS

WINTERS BROS. WASTE SYSTEMS, INC., WINTERS BROS' TRANSFER STATION
CORPORATION, WINTERS BROS. RECYCLING CORPORATION, JERRY CIFOR,
COMERICA, INC., COMERICA BANK, CLAIRVEST GROUP, INC., CLAIRVEST EQUITY
PARTNERS LIMITED PARTNERSHIP, JOSEPH WINTERS, AND SEAN WINTERS,

Defendants.

───────────────────

MEMORANDUM AND ORDER
September 19, 2007

───────────────────

JOSEPH F. BIANCO, District Judge:

Plaintiff Kevin Jones ("Jones") brings this action against Winters Bros. Waste Systems, Inc., Winters Bros. Transfer Station Corporation, Winters Bros. Recycling Corporation (collectively, "Winters Bros."), Jerry Cifor, Comerica, Inc., Comerica Bank, Clairvest Group, Inc., Clairvest Equity Partners Limited Partnership, Joseph Winters, and Sean Winters (collectively, "defendants"), alleging tortious interference with plaintiff's right to engage in interstate commerce in violation of 42 U.S.C. § 1983, as well as various state law contract and tort claims. Plaintiff's claims arise from his sale of the majority of his shares in Medford Transfer LLC ("Medford") and Excel Recycling LLC ("Excel") to certain of the defendants on September 15, 2004 (the "September 15 Sale").

Plaintiff moves to disqualify the firm Certilman Balin Adler & Hyman, LLP ("Certilman Balin" or "firm") as counsel for defendants Winters Bros. Waste Systems, Inc., Winters Bros. Transfer Station Corporation, Winters Bros. Recycling Corporation, Jerry Cifor, Clairvest Group, Inc., Clairvest Equity Partners Limited Partnership, Joseph Winters, and Sean Winters (collectively, "Certilman Balin clients"). Plaintiff contends that the firm's continued representation of the Certilman Balin clients in this action presents a conflict of interest because the firm counseled Excel, which plaintiff managed, regarding matters allegedly central to this action. For the

following reasons, plaintiff's motion is denied.

I. BACKGROUND

A. The Complaint

According to plaintiff's complaint, Jones retained a 10% interest in both Medford and Excel after the September 15 Sale. (Compl. ¶ 36.) In conjunction with this sale, defendants agreed to maintain and enhance the value of Medford and Excel by, *inter alia*, increasing their operating capacities and obtaining various government permits. (*Id.* ¶ 38.) Plaintiff alleges that defendants failed to meet these obligations, and engaged in misrepresentation and other malfeasance that diminished the value of Jones's residual interest in Medford and Excel, giving rise to a claim for damages. (*Id.* ¶¶ 40-41.)

B. Facts Relating to Disqualification

The following facts are not in dispute for purposes of this motion, unless otherwise noted.

Between September 15, 2004 and November 1, 2006, Jones served as the "day-to-day operations manager" of Excel. (Pl.'s Mem. at ¶ 6.) In 2004, defendant Winters Bros. acquired a majority interest in Excel and engaged Certilman Balin to represent Excel in connection with its government permits and other corporate matters. (Rigano Aff. ¶¶ 5-6.) In its representation of Excel, Certilman Balin communicated directly with Jones. (*Id.* ¶ 7.) However, as plaintiff recognizes, "Certilman Balin's client was Excel," (Rep. Mem. ¶ 4), and plaintiff "was not personally represented by Certilman Balin or by James Rigano or David Sloane," two attorneys at Certilman Balin who worked on the Excel matter. (Rep. Aff. ¶ 3.)

Plaintiff contends, however, that as Excel's "corporate actor," (Rep. Mem. ¶ 12), "for all intents and purposes, [he] was Excel." (Rep. Aff. ¶ 3.) Plaintiff further contends that he "communicated directly with Mr. Sloane regarding every detail of Excel's operations and the planned expansion," (Jones Aff. ¶ 7), including matters "nearly identical" to those at issue in this action, such as Excel's maintenance of various government permits. (Jones Aff. ¶ 6; Pl.'s Mem. ¶ 9.) Plaintiff asserts that these communications gave rise to an "attorney-client relationship" between Jones and Certilman Balin. (*Id.* ¶ 6.) In particular, plaintiff asserts that he "considered Mr. Rigano to be [his] lawyer." (Jones Aff. ¶ 6.)

Defendants contend that, during the firm's representation of Excel, "there were no legal services performed on behalf of Jones, and no such services were requested or necessary." (Sloane Aff. ¶ 8; Rigano Aff. ¶ 8.) Defendants further contend that the firm "did not . . . represent Excel in matters substantially related to this action," (Def. Mem. at 3), and does not possess "confidential information pertaining to Jones." (Sloane Aff. ¶ 10; Rigano Aff. ¶ 10.).

C. Procedural History

Plaintiff filed his complaint on January 26, 2007 and the instant motion on June 18, 2007. The Court heard oral argument from both parties on September 5, 2007.

2

II. DISCUSSION

A. Disqualification of Counsel

Disqualification is viewed "with disfavor in this circuit," *In re Bohack Corp.*, 607 F.2d 258, 263 (2d Cir. 1979), because it "impinges on parties' rights to employ the attorney of their choice." *U.S. Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985) (citation omitted). In particular, the Second Circuit has noted the "high standard of proof" required for disqualification motions because, among other things, they are "often interposed for tactical reasons, and that even when made in the best of faith, such motions inevitably cause delay." *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983); *accord Gov't India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978).

Nevertheless, the disqualification of counsel "is a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). A federal court's power to disqualify an attorney derives from its "inherent power to 'preserve the integrity of the adversary process,'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)), and "is only appropriate where allowing the representation to continue would pose a significant risk of trial taint." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981) (internal quotation marks omitted). In exercising this power, courts look for "general guidance" to the American Bar Association ("ABA") and state disciplinary rules, although "not every violation of a disciplinary rule will necessarily lead to disqualification."[1] *Hempstead Video*, 409 F.3d at 132.

B. Grounds for Disqualification of Certilman Balin

1. Conflict of Interest

Plaintiff argues that Certilman Balin should be disqualified because it "worked closely" with plaintiff during the firm's representation of Excel, (Pl.'s Mem. ¶ 6), at a time when plaintiff was Excel's primary "corporate actor." (Rep. Mem. ¶ 12). Specifically, plaintiff contends that the firm's continued representation of the Certilman Balin clients would violate New York Code of Professional Responsibility, Disciplinary Rule 5-108, because the firm developed an "attorney-client relationship" with Jones as a result of the Excel representation. (Pl.'s Mem. ¶ 6.) Plaintiff emphasizes that it would be unfairly prejudicial for defendants to control the attorney-client privilege over Jones's communications with Certilman Balin because these communications concerned matters that "lie at the very heart of this lawsuit." (Rep. Mem. ¶ 11.)

Disciplinary Rule 5-108 provides that "[a] lawyer who has represented a client in a matter shall not, without the consent of the

---

[1] The Court also notes that Civil Rule 1.5(b)(5) of the Local Rules of the U.S. District Courts for the Southern and Eastern Districts of New York binds attorneys appearing before those courts to the New York State Lawyer's Code of Professional Responsibility. Local Civ. R. 1.5(b)(5); *see, e.g., United States v. Hammad*, 846 F.2d 854, 857-58 (2d Cir. 1988); *Polycast Tech. Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 625 (S.D.N.Y. 1990) ("[I]n this Court federal law incorporates by reference the Code of Professional Responsibility.").

3

former client after full disclosure . . . [t]hereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client . . . ." N.Y. Code of Prof. Resp. DR 5-108. The Second Circuit has held that an attorney may be disqualified under Disciplinary Rule 5-108 if:

> (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Hempstead Video*, 409 F.3d at 133 (2d Cir. 2005). The Court finds that plaintiff does not meet the Second Circuit's test for disqualification because he has failed to establish that he is a former client of Certilman Balin.

The first prong of this test requires an attorney-client relationship between the movant and the law firm sought to be disqualified. In the context of corporate clients, such as Excel, "it is well-accepted that [u]nless the parties have expressly agreed otherwise in the circumstances of a particular matter, a lawyer for a corporation represents the corporation, not its employees." *Ello v. Singh*, No. 05 Civ. 9625, 2006 U.S. Dist. LEXIS 55542, at *14 (S.D.N.Y. Jul. 31, 2006) (internal citation and quotation marks omitted); *see also Kushner v. Herman*, 628 N.Y.S.2d 123, 124 (N.Y. App. Div. 1995) ("[I]f the law firm represented the corporation in question, it would not thereby represent the corporation's individual officers and directors."); *Talvy v. Am. Red Cross in Greater N.Y.*, 618 N.Y.S.2d 143, 149 (N.Y. App. Div. 1994) ("Unless the parties have expressly agreed otherwise in the circumstances of a particular matter, a lawyer for a corporation represents the corporation, not its employees."). Here, where Jones does not contend that Certilman Balin explicitly agreed to represent him individually, the firm's representation of Excel does not give rise to an attorney-client relationship between the firm and plaintiff.

Indeed, plaintiff has proffered no evidence of such a relationship to the Court, except to state in a conclusory manner that Jones "considered" the firm to represent him. Such a "subjective belief" does not give rise to an attorney-client relationship. *See Kubin v. Miller*, 801 F. Supp. 1101, 1115 (S.D.N.Y. 1992) ("[A]lthough the so-called client's subjective belief can be considered by the court, this belief is not sufficient to establish an attorney-client relationship."); *see also Hansen v. Caffry*, 720 N.Y.S.2d 258, 259 (N.Y. App. Div. 2001) ("[A] plaintiff's unilateral beliefs and actions do not confer upon it the status of client.") (internal citations and quotation marks omitted).

Plaintiff also appears to argue that, absent disqualification, Certilman Balin may divulge Jones's confidential information. However, because the firm and Jones did not have an attorney-client relationship, he "could not have reasonably believed or expected that any information given to the firm would be kept confidential . . . ." *Wayland v. Shore Lobster & Shrimp Corp.*, 537 F. Supp. 1220, 1223 (S.D.N.Y. 1982). The attorney-client privilege over Jones's communications with the firm

4

belongs to Excel, not to Jones. As the Second Circuit held:

> Recognizing that entities can act only through agents, courts have held that any privilege that attaches to communications on corporate matters between corporate employees and corporate counsel belongs to the corporation, not to the individual employee, and that employees generally may not prevent a corporation from waiving the attorney-client privilege arising from such communications.

*United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, and Helpers of Am., AFL-CIO*, 219 F.3d 175, 214 (2d Cir. 1997); *see also United States v. Richard Roe, Inc.*, 168 F.3d 69, 72 (2d Cir. 1999) (citing *Teamsters* and holding that attorney-client privilege between corporate counsel and corporation "belongs not to [a] former employee, but to the corporation"). Jones cannot reasonably expect his communications with the firm to remain confidential, nor can he prevent defendants from asserting Excel's attorney-client privilege over these communications.

Jones relies heavily on *Tekni-Plex, Inc. v. Meyner and Landis*, 89 674 N.E.2d 663, 668-69 (N.Y. 1996), to argue that he controls the attorney-client privilege over his communications with the firm. However, *Tekni-Plex* is entirely inapposite here. While *Tekni-Plex* addressed the corporate attorney-client privilege in the context of successive corporate management, *Tekni-Plex, Inc. v. Meyner and Landis*, 89 674 N.E.2d 663, 668-69 (N.Y. 1996), the instant action pertains to an employee's proposed assertion of this privilege on his own behalf. *Tekni-Plex* does not provide a useful analogy and is inapplicable to plaintiff's motion.

Similarly unavailing is plaintiff's emphasis on the importance of his communications with the firm to the present action. The Court notes that defendants dispute that these communications with the firm are relevant. However, even assuming *arguendo* that these communications are crucial to this action, the Court's analysis does not change. Because the Court finds that Jones and the firm did not have an attorney-client relationship, and that Jones thus fails to meet the first prong of the Second Circuit's test for disqualification, the Court need not consider the relevance of the disputed communications.[2]

In sum, having considered the applicable ethical rules to guide the Court's discretion as well as all other relevant factors, the Court concludes that disqualification under the circumstances of this case is unwarranted.

---

[2] Plaintiff appears to suggest in his moving affidavit, filed June 18, 2007, that Certilman Balin's continued representation of the Certilman Balin clients also violates the so-called "witness-advocate rule." (Jones Aff. ¶ 9.) However, plaintiff did not raise such an alleged violation as a separate grounds for disqualification in his motion, and plaintiff's counsel affirmed at oral argument that plaintiff is not moving for disqualification on those grounds. Even assuming *arguendo* that plaintiff were moving on the basis of the witness-advocate rule, the Court finds that plaintiff has presented insufficient evidence at this juncture to meet that rule's standard for disqualification. *See Crews v. County of Nassau*, No. 06 Civ. 2610 (JFB), 2007 WL 316568, at *3-*6 (E.D.N.Y. Jan. 30, 2007) (requiring that potential testimony of alleged witness advocate concern issue "significant" to case at bar in order to warrant disqualification).

III. CONCLUSION

For the foregoing reasons, plaintiff's motion to disqualify Certilman Balin is DENIED.

The parties shall proceed with discovery under the direction of Magistrate Judge Tomlinson.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 19, 2007
Central Islip, NY

\* \* \*

The attorney for plaintiff is Steven B. Ferber, Esq., of Siben & Ferber, 1455 Veterans Memorial Highway, Hauppauge, New York, 11749. The attorneys for defendants are Douglas E. Rowe, Esq. and Matthew J. Bizzaro, Esq., of Certilman Balin Adler & Hyman, LLP, 90 Merrick Avenue, Ninth Floor, East Meadow, New York, 11554.